**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARIE CLAIRE NOEL,

      Plaintiff,

v.                                                                    Case No:  6:14-cv-597-Orl-40DAB

TERRACE OF ST. CLOUD, LLC
and TINA BOURLAND,

      Defendants.

_____

**ORDER**

    This cause comes before the Court without oral argument on Plaintiff's Second Motion for Partial Summary Judgment (Doc. 49), filed May 12, 2015.  Defendants, Terrace of St. Cloud, LLC and Tina Bourland (collectively, "Defendants"), responded in opposition on June 5, 2015 (Doc. 55), and Plaintiff replied on July 29, 2015 (Doc. 66). Upon consideration and review of the record as cited by the parties in their respective papers, the Court denies Plaintiff's Second Motion for Partial Summary Judgment.

**I.       BACKGROUND**

    In February 2010, Plaintiff, Marie Claire Noel, was hired as a full-time certified nursing assistant ("CNA") by Defendant Terrace of St. Cloud, LLC's ("Terrace") predecessor, Southern Oaks Healthcare ("Southern Oaks").[1] (Doc. 54-1, 14:17–15:1). In the summer of 2013, Noel became ill with meningitis and took approved leave pursuant to the Family Medical Leave Act on August 24, 2013. (*Id.* at 32:4–20, 34:2–13). On September 18, 2013, Plaintiff underwent surgery to eradicate a meningitis colony in her

_____

[1]    Southern Oaks is not a party to this lawsuit.

brain. (*Id.* at 36:12–18). She returned to work on October 18, 2013. (*Id.* at 36:19–23). A short time later, however, Plaintiff had to take additional leave due to her medical condition. (*Id.* at 39:5–40:6). Plaintiff eventually returned to work on November 4, 2013. (*Id.* at 41:25–42:3). When she returned to work, the administrator of Southern Oaks informed all employees that Southern Oaks had been purchased by another company and would become Terrace of St. Cloud, LLC effective December 1, 2013. (*Id.* at 45:17–49:15; Doc. 47-1, 45:25–46:11).

The purchasers of Southern Oaks retained a team of consultants—Cynthia Lasher, Allison Hillhouse, and Jill Tapia—to assist with the transition from Southern Oaks to Terrace. (Doc. 48-1, 13:21–14:16). As the senior nurse consultant, Lasher led the transition team and was tasked with deciding which Southern Oaks employees Terrace would retain at the facility upon completion of the transition on December 1, 2013. (*Id.* at 14:6–14, 43:15–44:4). In mid-November 2013, the transition team visited to help the Southern Oaks employees complete Terrace's job application, written interview questions, and new hire packet. (Doc. 54-1, 49:16–53:12; Doc. 60-1, 30:11–32:15; Doc. 61-1, 20:24–22:18). Plaintiff filled out all of the provided documents. (Doc. 48-3).

Plaintiff continued to work at Southern Oaks through the end of November 2013. (Doc. 54-1, 65:1–6). On December 1, 2013, the facility which was once known as Southern Oaks began operating as Terrace. (Doc. 47-1, 14:18–20; Doc. 48-1, 15:7–10). That same day, at about 10:34 a.m., Plaintiff alleges that Lasher called her[2] and stated that Plaintiff "will no longer work for Terrace of St. Cloud" because she was on "leave of

---

[2] Plaintiff did not specifically identify Lasher as the caller. However, it is undisputed that Lasher is the only person who would have called Plaintiff on December 1, 2013. (Doc. 48-1, 43:15–44:4).

absence for too long." (Doc. 54-1, 71:7–73:11). Plaintiff alleges that Lasher hung up when Plaintiff attempted to explain her reason for taking leave. (*Id.*). Plaintiff then attempted to call her supervisor and the Director of Nursing, Defendant Tina Bourland, to find out the reason behind Terrace's decision. (*Id.* at 75:6–77:23). Plaintiff left Bourland numerous voicemails with her telephone number; however Bourland never returned Plaintiff's calls. (*Id.*). On December 17, 2013, Plaintiff went to Terrace to pick up her last paycheck and to speak with Bourland, but Bourland was unavailable. (*Id.* at 77:2–8).

On November 17, 2014, Plaintiff filed an Amended Complaint asserting five claims against Terrace and Bourland. (Doc. 25). Count I alleges interference, restraint, and denial in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. Count II alleges discrimination in violation of the FMLA. Count III alleges termination in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01–.11, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Count IV alleges denial of reasonable accommodations in violation of the FCRA and ADA. Finally, Count V alleges race discrimination in violation of 42 U.S.C. § 1981. Plaintiff now moves for partial summary judgment with respect to Defendants' alleged legitimate, non-discriminatory reason for terminating Plaintiff. (Doc. 49).

## II.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials," but may also consider any other material in the record. Fed. R. Civ. P. 56(c)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine disputes of material facts. *Celotex*, 477 U.S. at 325; *see also Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. *See Porter*, 461 F.3d at 1320. Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

A plaintiff may prove that she was discriminated against by her employer in violation of the FMLA, FCRA, ADA, or § 1981 by presenting either direct or circumstantial evidence of discrimination. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). When examining a claim of discrimination supported by circumstantial

evidence such as what Plaintiff presents here,[3] the Court applies the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. The burden of production then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the allegedly discriminatory conduct. *Id.* Once the employer articulates a non-discriminatory reason for the conduct in dispute, the *McDonnell Douglas* burden-shifting framework is satisfied, leaving the plaintiff with the ultimate burden to persuade the trier of fact that her employer's proffered non-discriminatory explanation is not the true reason for its conduct, but merely a pretext for discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 518–19 (1993).

For purposes of resolving this motion, the Court assumes, without deciding, that Plaintiff can establish a prima facie case of discrimination. Thus, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for not hiring Plaintiff.

## A.    Legitimate, Non-Discriminatory Reason

Defendants state that their legitimate, non-discriminatory reason for not hiring Plaintiff is that Plaintiff did not attend a personal interview. Specifically, Lasher testified that the only criteria used for deciding whether Terrace would offer employment to Southern Oaks' employees, including Plaintiff, was whether the employee was

---

[3]  Plaintiff emphasizes in her motion that she only intends to proceed on summary judgment using a circumstantial evidentiary framework.  (Doc. 47, p. 8).  Therefore, the Court does not address any claims Plaintiff may have regarding direct evidence of discrimination.

interviewed in person.[4] (Doc. 48-1, 18:17–23, 24:10–14, 26:12–27:25). Although Plaintiff was asked to complete written interview questions, these were not considered by Terrace to satisfy the personal interview requirement; only "one-on-one/face-to-face interviews" were considered interviews for hiring purposes. (*Id.* at 19:11–23). Therefore, if a Southern Oaks employee was not personally interviewed, they were not eligible for employment with Terrace. Neither Lasher, Tapia, nor Hillhouse interviewed Plaintiff. (*Id.* at 49:8–14; Doc. 55, pp. 16–19). Thus, Defendants maintain that Terrace did not hire Plaintiff because she did not attend a personal interview.

Defendants further argue that Plaintiff could not have been denied employment based on her use of FMLA leave because Lasher never knew anything about Plaintiff's attendance record or FMLA leave while Plaintiff worked for Southern Oaks. (Doc. 48-1, 22:3–13). In fact, all of Southern Oak's human resources files were removed from the building, so Lasher never had an opportunity to review them. (*Id.* at 20:4–9). Additionally, when Lasher made phone calls to the Southern Oaks' employees who were not being offered jobs with Terrace, she did not provide them with a reason for Terrace's decision. (*Id.* at 23:11–16).

---

[4]   Prior to Lasher's deposition, Defendants believed that Plaintiff was not hired based on Bourland's recommendation to Lasher not to hire Plaintiff because of attitude and performance issues. (Doc. 55, p. 5). Defendants maintain that it was not until Lasher's April 17, 2015 deposition that they learned Lasher's decision not to hire Plaintiff was solely based on the fact that Plaintiff was not formally interviewed. (*Id.*). Consequently, Plaintiff requests a jury instruction stating that Plaintiff's performance, attitude, and compliance were not factors influencing Defendants' adverse employment decision. (Doc. 66, pp. 4–5). The Court will address jury instructions at the appropriate time during trial.

The Court finds that Defendants have satisfied their burden by articulating a non-discriminatory reason for not hiring Plaintiff. The *McDonnell Douglas* framework is therefore satisfied and Plaintiff is left with the ultimate burden of showing, as a matter of law, that Defendants' articulated reason is merely pretext for discrimination.

**B.     Pretext**

Plaintiff submits that the Court should find that Defendants' alleged legitimate, non-discriminatory reason for their adverse employment action is false because they "present[] no record evidence that personal interviews were part of the transition or hiring process." (Doc. 66, p. 5). Plaintiff points to the deposition testimony of Hillhouse and Tapia, who state that personal interviews were not a part of Terrace's hiring process and that written interview questions were used in lieu of face-to-face interviews. (Doc. 60-1, 35:8–36:22; Doc. 61-1, 18:4–13). Plaintiff further argues that her satisfaction of Terrace's interview requirement is evidenced by her completion of the new hire documents (Doc. 48-3), which Lasher admits were only provided to new employees after they had been personally interviewed (Doc. 48-1, 32:23–33:9). Plaintiff therefore concludes that this testimony shows that Defendants' proffered reason for not hiring her was false.

However, it is not enough that an employer's articulated reason for an adverse employment decision is false. A legitimate, non-discriminatory reason proffered by an employer is not "pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (internal quotation marks omitted). Plaintiff does not cite to any evidence—much less argue in her summary judgment briefs—that discrimination was the true reason for

Defendants' decision not to hire her. This reason alone is sufficient to deny Plaintiff's motion for partial summary judgment.

Moreover, even if Plaintiff had carried her summary judgment burden, Defendants produce evidence genuinely disputing that their proffered reason was false. Lasher, as the hiring authority for Terrace, testified at her deposition that personal interviews were conducted during the transition process and that Terrace only retained Southern Oaks' employees if they were interviewed "face-to-face." (Doc. 48-1, 19:11–23). Lasher further testified that the written interview questions were merely used as "a sounding board" for the interviewers and did not constitute an interview for employment purposes. (*Id.* at 19:11–23, 34:21–35:1).[5] Lasher and Tapia also testified that if an employee was in fact interviewed and hired by Terrace, their new hire documents would have been witnessed and completed by Terrace's human resources department. (Doc. 48-1, 38:6–18, 45:17– 49:3; Doc. 60-1, 53:2–54:3). In this case, although Plaintiff signed the new hire documents, several pages were not witnessed, and the Personnel Action Form and Pre-hire Checklist were incomplete. (*See* Doc. 48-3, pp. 5, 6, 11–14, 20, 21, 34). Due to the conflicting testimony of Tapia, Hillhouse, and Lasher, and the discrepancies in Plaintiff's application materials, Terrace's reason for not hiring Plaintiff remains unclear and is certainly in dispute.

While there are weaknesses and inconsistencies in the evidentiary record that undermine Defendants' proffered reason for declining to hire Plaintiff, the Court cannot engage in quintessential functions of the trier of fact on summary judgment, such as

---

[5]   During her deposition, Bourland also testified that interviews were held during the transition process. (Doc. 47-1, 29:13–20).

weighing the evidence and judging the credibility of witnesses. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255. In drawing all reasonable inferences in the light most favorable to Defendants, the Court finds that genuine factual disputes remain as to the hiring process and the reason Terrace did not hire Plaintiff.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Second Motion for Partial Summary Judgment (Doc. 49) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 1, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record