**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MARIE CLAIRE NOEL,

    Plaintiff,

v.                                                                                          Case No: 6:14-cv-597-Orl-40DAB

TERRACE OF ST. CLOUD, LLC,

    Defendant.
_____

## ORDER

This cause comes before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial (Doc. 130), filed December 1, 2015. On December 23, 2015, Plaintiff responded in opposition. (Doc. 134). Upon consideration, Defendant's motions are denied.

**I.    BACKGROUND**

Plaintiff, Marie Claire Noel, instituted this lawsuit against Defendant, Terrace of St. Cloud, LLC ("Terrace"), to vindicate her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Florida Civil Rights Act, Fla. Stat. §§ 760.01–.11. In February 2010, Plaintiff began working as a full-time Certified Nursing Assistant at a nursing home operated by Southern Oaks Healthcare ("Southern Oaks").[1] (Doc. 67, ¶ 9(f)). In the summer of 2013, Plaintiff contracted cerebral meningitis, which caused her to take medical leave under the FMLA

---

[1] Southern Oaks is not a party to this lawsuit.

1

in order to receive treatment and undergo surgery.  (*Id.* ¶¶ 9(g–j)).  Plaintiff returned to work permanently on November 4, 2013.  (*Id.* ¶ 9(m)).  On December 1, 2013, Terrace took over operation of the nursing home from Southern Oaks.  (*Id.* ¶ 9(q)).  That same day, Plaintiff received a call from Terrace informing her that she would not be employed by Terrace.  (*Id.* ¶ 9(u)).

The gravamen of Plaintiff's claims is that she believes she was illegally separated from employment because of her exercise of medical leave under the FMLA, because she was disabled, perceived as disabled, or required a reasonable accommodation under the ADA, or because she was discriminated against due to her race, color, or national origin.  (*Id.* ¶ 2).  Terrace denies that it illegally separated Plaintiff from employment and states that the only reason it did not retain Plaintiff in the transition from Southern Oaks is because Plaintiff did not complete Terrace's application process.  (*Id.* ¶ 3(b)).

This matter proceeded to a jury trial beginning on October 8, 2015.  On October 14, 2015, the jury returned a verdict in favor of Plaintiff, finding that Terrace violated Plaintiff's ADA rights by denying her a reasonable accommodation.  (Doc. 116).  The jury further determined that Plaintiff was entitled to recover $1,347.29 in lost wages, $27,512.95 for mental anguish and suffering, and $65,000.00 in punitive damages.  (*Id.*).  The Court thereafter entered judgment in favor of Plaintiff in the amount of $93,860.24 according to the jury's verdict.  (Doc. 125).  Terrace now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  In the alternative, Terrace moves for a new trial.

**II.   DISCUSSION**

   **A.   Renewed Motion for Judgment as a Matter of Law**

Judgment as a matter of law should only be granted if no objectively reasonable jury, based on the evidence and inferences adduced at trial and through the exercise of impartial judgment, could reach the verdict reached. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). Stated differently, the party moving for judgment as a matter of law must show that the trial evidence "is so overwhelmingly [in its favor] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). However, where there is substantial evidence in the trial record which would allow reasonable minds to reach different conclusions, judgment as a matter of law is inappropriate. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010). In considering a motion for judgment as a matter of law, the district court must review the record and draw all reasonable inferences derived therefrom in the light most favorable to the non-moving party. *Brown*, 597 F.3d at 1173. Importantly, the district court must not make credibility determinations or weigh evidence, as these are functions reserved for the jury. *Id.*

Terrace moves for judgment as a matter of law for a number of reasons. First, Terrace claims that the trial evidence is insufficient to support the jury's verdict that Terrace violated Plaintiff's rights under the ADA. (Doc. 130, pp. 6–9). Second, Terrace contends that the trial evidence is insufficient to support the jury's award of punitive damages. (*Id.* at pp. 6–7). Third, Terrace asserts that Plaintiff never pleaded the theory of liability through which she prevailed—that Terrace is liable for Southern Oaks'

misconduct as its successor-in-interest—and that it first learned of Plaintiff's theory at trial. (*Id.* at pp. 9–16). Lastly, Terrace submits that, even if Plaintiff had properly alleged the theory of successor liability, the evidence adduced at trial is insufficient to support the jury's finding that Terrace can be held liable under that theory. (*Id.* at pp. 11–16).

The Court will not reach some of Terrace's arguments, however, as Terrace failed to raise them prior to the matter being submitted to the jury. Rule 50 is clear in its procedure. Before a case is submitted to the jury for consideration, a party may move for judgment as a matter of law on any issue which is not supported by legally sufficient evidence. Fed. R. Civ. P. 50(a). If the court denies relief at that time, the party may renew the motion after the jury has returned its verdict. Fed. R. Civ. P. 50(b). It is well-established that "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a)" and that "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015). Although "[s]trict identity of issues . . . is not required" of the two motions, the grounds identified in a Rule 50(b) motion must be "closely related" to the grounds raised in the prior Rule 50(a) motion such that opposing counsel and the court are notified of the evidentiary shortcomings asserted. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010). This procedural safeguard "protects the non-moving party's right to cure deficiencies in the evidence before the case is submitted to the jury" and ensures that "[t]he moving party cannot ambush the court and opposing counsel after the verdict when the only remedy is a completely new trial." *Middlebrooks*, 256 F.3d at 1245.

4

Construed broadly, Terrace has preserved only two of the issues it presents in its renewed motion. First, Terrace challenges whether there is sufficient evidence to support the jury's award of punitive damages. (Unoff. Tr. 3::178:21–179:8).[2] Terrace explains that it was never Plaintiff's employer, it did not know about Plaintiff's disability or her exercise of medical leave at Southern Oaks when it made its decision not to retain Plaintiff, and that any violation of Plaintiff's ADA rights must have occurred at the hands of its predecessor, Southern Oaks, for which Terrace cannot now be held responsible. Terrace therefore concludes that it could not have acted with the mindset necessary to support an award of punitive damages. Second, although Terrace did not explicitly raise the issue of successor liability prior to the matter being submitted to the jury, the nature of Terrace's argument on punitive damages leads the Court to interpret Terrace's position as also challenging whether there is sufficient evidence to hold it responsible for Southern Oaks' misconduct as its successor-in-interest. All other issues raised in Terrace's renewed motion, however, are not properly preserved for review. For ease of analysis, the Court will address the two issues Terrace did preserve in reverse order.

    **1.    Whether Legally Sufficient Trial Evidence Exists to Impose Liability Against Terrace as Southern Oaks' Successor-in-Interest**

The Court begins with Terrace's argument that it cannot be held liable for any discriminatory conduct by Southern Oaks. The general rule is that a successor entity is not responsible for the debts and liabilities of a predecessor unless the successor agrees

---

[2] Neither party has purchased the trial transcript in this matter. The Court therefore relies on its unofficial transcript, which will be cited as (Unoff. Tr. *D*::*P*:*L*), where *D* represents the numeric day of trial, *P* represents the page designation, and *L* represents the line designation.

to assume those obligations. *See Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 821 (11th Cir. 1993). However, beginning with the United States Supreme Court's unanimous decision in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973), this general rule yields in the context of labor and employment disputes, where important employment-related policies may justify imposing liability against a successor for its predecessor's discriminatory actions.[3] As the Supreme Court observed in *Golden*, the reason for imposing liability in these circumstances is that, although the successor company "was not a party to the unfair labor practices" and now "operate[s] the business without any connection with [its] predecessor," the successor is in the best position to either remedy the prior unfair labor practices or to seek indemnification from its predecessor. *Id.* at 171 n.2. Therefore, labor strife is best avoided, federally guaranteed rights are best enforced,

---

[3] After this case was submitted to the jury, Terrace raised for the first time whether successor-in-interest liability applies in ADA lawsuits. (Unoff. Tr. 4::14:21–16:16). While the Court asked both parties to submit supplemental briefs on the question, Terrace's supplemental brief and its instant renewed motion for judgment as a matter of law both appear to concede that a successor can be held liable for its predecessor's violation of the ADA. (*See* Doc. 123, pp. 8–9; Doc. 130, pp. 13–14). The Court agrees. While the Eleventh Circuit has not yet had the opportunity to explicitly extend successor liability principles to violations of the ADA, it has previously held that successor liability can be imposed for violations of Title VII. *See, e.g.*, *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983) (per curiam), *cert. denied*, 464 U.S. 933 (1983). Since the ADA invokes Title VII's powers, remedies, and procedures at 42 U.S.C. § 12117(a), it follows that successor liability principles would equally apply to the ADA. The Court's conclusion is further supported by other federal courts that have extended successor liability to the ADA and to analogous statutory schemes. *See, e.g.*, *Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 93 (3d Cir. 2011) (applying successor liability principles in ERISA dispute); *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1236–38 (11th Cir. 2005) (applying successor liability principles in USERRA dispute); *Coleman v. Keebler Co.*, 997 F. Supp. 1094, 1098–1100 (N.D. Ind. 1998) (applying successor liability principles in ADA dispute); *McKee v. Am. Transfer & Storage*, 946 F. Supp. 485, 487–88 (N.D. Tex. 1996) (same).

and victimized employees are best protected by holding the successor responsible.  *Id.* at 185.

Ultimately, whether to impose liability against a successor is a fact-intensive inquiry which requires the court to "balance[] the interests of the employees and the employer and labor law policy generally."  *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983) (per curiam) (emphasis omitted), *cert. denied*, 464 U.S. 933 (1983).  Courts may consider myriad factors, including whether there has been substantial continuity in business operations from the predecessor to the successor, whether the successor employs substantially the same work force as the predecessor, and whether the successor operates at the same location as the predecessor.  *See, e.g.*, *Rojas v. TK Commcn's, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996); *Evans Servs., Inc. v. NLRB*, 810 F.2d 1089, 1092–93 (11th Cir. 1987).  Many courts have held that the two most significant factors to consider are whether the successor had notice of the prior misconduct and whether the successor is able to provide relief.  *See, e.g.*, *Rojas*, 87 F.3d at 750; *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985).  Nevertheless, the question is "fact specific and must be conducted 'in light of the facts of each case and the particular legal obligation which is at issue.'"  *Nat'l Airlines*, 700 F.2d at 698 (quoting *Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 262 n.9 (1974)).

Terrace maintains that the facts in the instant case lead to the irrefutable conclusion that it was not Southern Oaks' successor-in-interest. (Doc. 130, pp. 11–16). Prior to the instant motion, however, Terrace has acknowledged and admitted that it is Southern Oaks' successor-in-interest under the ADA.  Although Terrace initially asserted

7

the affirmative defense that it was not Southern Oaks' successor, it later stipulated in the parties' Joint Pre-Trial Statement—under the heading "Statement of Admitted Facts Which Require No Proof at Trial"—that it was Southern Oaks' successor-in-interest under the ADA. (Doc. 67, ¶ 9(r)). Further, counsel for Terrace conceded several times at trial that Terrace was Southern Oaks' successor-in-interest, (*see, e.g.*, Unoff. Tr. 2::7:25–8:18, 3::13:16–14:20), never objected when Plaintiff referred to Terrace as Southern Oaks' successor for purposes of imposing liability, (*see, e.g.*, Unoff. Tr. 1::164:25–165:11, 3::25:25–26:13, 3::205:2–7, 3::256:20–257:12), and consented at trial to the reading of the parties' pre-trial stipulation that Terrace was Southern Oaks' successor-in-interest under the ADA, (*see, e.g.*, Unoff. Tr. 2::165:2–166:1, 3::181:15–183:14, 3::186:14–189:16; 4::1:13–2:23). It is not until after the jury returned an adverse verdict that Terrace wishes to dispute whether it was Southern Oaks' successor-in-interest.

Because the parties are bound by their pre-trial stipulations, *see G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997),[4] the Court need not determine whether Terrace was, in fact, Southern Oaks' successor-in-interest. Rather, the Court will accept Terrace's numerous pre-verdict representations that it was. As a result, Terrace may be held liable not only for its own misconduct under the ADA, but also for any misconduct by Southern Oaks, including any which may justify the imposition of

---

[4] This Court's Local Rules, the Case Management and Scheduling Orders entered in this case, and the Court's Civil Pretrial Order additionally informed the parties that their Joint Pre-Trial Statement would supersede their pleadings, "control the course of the trial," and could not be amended except by order of the Court in the furtherance of justice. *See* M.D. Fla. R. 3.06(e); (Doc. 13, p. 8); (Doc. 59, p. 8); (Doc. 81, ¶ 3). At no time did Terrace move to amend the parties' Joint Pre-Trial Statement.

punitive damages. The only question remaining for the Court, then, is whether sufficient trial evidence exists to support the jury's award of punitive damages in this case.

### 2. Whether Legally Sufficient Trial Evidence Exists to Award Punitive Damages Under the ADA

The jury found that Terrace violated Plaintiff's rights under the ADA by denying a reasonable accommodation for her disability. (Doc. 116). Denial of a reasonable accommodation under the ADA includes circumstances such as those presented in this case where an employer denies employment opportunities to a job applicant or employee based on the employer's belief that it will need to provide a reasonable accommodation—such as medical leave—to the applicant or employee in the future. *See* 42 U.S.C. § 12112(b)(5)(B). An employer is liable for punitive damages for its violation of the ADA where the employer is found to have acted with malice or reckless indifference to the plaintiff's federally protected rights. *See* 42 U.S.C. §§ 1981a(a)(2), (b)(1). "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" *EEOC v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (quoting *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)). The defendant's negligence toward the plaintiff's civil rights is not enough to sustain an award of punitive damages. *Id.* Instead, the case is one where the defendant acts "in the face of a perceived risk that its actions will violate federal law." *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). Malice or reckless indifference under § 1981a may be proven through evidence showing a pattern of discrimination by the defendant, the defendant's malevolence toward the plaintiff's civil rights, or the defendant's blatant disregard for its civil obligations. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1280 (11th Cir. 2008).

Plaintiff adduced substantial trial evidence which could lead a reasonable jury to conclude that Terrace acted with malice or reckless indifference when it denied Plaintiff employment opportunities on account of a perceived disability which would require reasonable accommodation. Plaintiff began working at Southern Oaks in February 2010. (Doc. 67, ¶ 9(f)). Plaintiff testified at trial that she contracted cerebral meningitis in the summer of 2013 and that Southern Oaks allowed her to take medical leave under the FMLA beginning August 24th. (Unoff. Tr. 1::190:5–191:1, 1::193:13–21). After undergoing surgery to eradicate a meningitis colony in her brain, Plaintiff returned to work on October 18th with instruction from her doctor that she only engage in light duty and not perform any heavy lifting. (*Id.* 1::193:22–196:13; Joint Ex. 1). However, Plaintiff stated that Southern Oaks ignored her doctor's orders and required her to work full duty, which included tasks such as lifting, bathing, showering, and transporting twelve residents assigned to her care. (Unoff. Tr. 1::194:19–195:16; *see also* Joint Ex. 4). Plaintiff estimated that her full duties required her to, at times, lift or move more than 100 pounds. (Unoff. Tr. 1::195:9–16). In the middle of her third day of full duty work in contravention of her doctor's orders, Plaintiff began bleeding from her nose and mouth. (*Id.* 1::194:19–195:16). Plaintiff entered a second period of FMLA leave the next day due to complications caused by working full duty. (*Id.* 1::195:14–16). Plaintiff was finally able to return to full duty on November 4th and worked without incident for four weeks. (*Id.* 1::196:17–23).

There was conflicting trial evidence as to what happened next and why. According to Terrace, Southern Oaks terminated Plaintiff on its final day of operation, November 30th, and Terrace did not retain Plaintiff because Plaintiff had not completed Terrace's

application process. (*See id.* 2::110:6–117:13; Joint Ex. 3). However, the jury heard from Southern Oaks' (and subsequently Terrace's) Director of Nursing, Tina Bourland, who revealed that she was the one who recommended that Terrace not employ Plaintiff. (Unoff. Tr. 3::138:24–139:1). Ms. Bourland explained both at trial and in answers to interrogatories which were introduced into evidence that she made her recommendation at that time based on Plaintiff's bad attitude, poor work performance, and failure to follow company policy while employed at Southern Oaks. (*Id.* 3::127:8–129:1; Pl.'s Ex. 4, ¶¶ 3, 5). Notwithstanding, Ms. Bourland conceded at trial that Plaintiff actually performed her job well, followed instructions, received positive performance reviews, and was always friendly and pleasant toward staff and residents. (Unoff. Tr. 3::136:19–137:14; Joint Ex. 5). In fact, about one year prior to making her recommendation to Terrace that it not retain Plaintiff, Ms. Bourland presented Plaintiff with a Certificate of Award recognizing her "dedication and commitment" to Southern Oaks' residents. (Unoff. Tr. 3::143:18–144:1; Pl.'s Ex. 3). Ms. Bourland stated at trial that she had no knowledge of whether Plaintiff had completed Terrace's application process. (Unoff. Tr. 3::114:11–16).

Moreover, Plaintiff testified at trial that she worked a full shift on November 30th without any notice of being terminated and that she first learned that she lost her job on December 1st (the day Terrace took over Southern Oaks). (*Id.* 1::204:23–206:7). On that day, Plaintiff stated she received a call from an unidentified Terrace employee[5] who informed her that she would not be employed by Terrace because she had missed too many days of work while at Southern Oaks. (*Id.* 1::205:12–206:10). Plaintiff testified that

---

[5]  The parties stipulated that this employee was later identified as Terrace's Regional Nurse Consultant, Cynthia Lasher. (Doc. 67, ¶ 9(u)).

the Terrace employee never referenced her failure to complete Terrace's application process. (*Id.* 1::206:15–18). Plaintiff further stated that she attempted to speak with a supervisor several times to understand why she could no longer work, but received no response. (*Id.* 1::206:25–207:14).

The jury also heard testimony from Mary Ellen Cortese, a Licensed Practical Nurse who worked at Southern Oaks during the same time period as Plaintiff. (*See id.* 1::245:5–13). Ms. Cortese stated that, like Plaintiff, she took FMLA leave while she worked at Southern Oaks—first in 2011 to undergo foot surgery and again in 2012 to care for her husband who had been diagnosed with cancer. (*Id.* 1::247:1–248:5). Ms. Cortese testified that during her second period of FMLA leave in 2012, Ms. Bourland informed her that she had taken a lot of time off and that she would be terminated if she were to take any more. (*Id.* 1::251:3–13). Ms. Cortese additionally testified about a 2012 performance evaluation in which Ms. Bourland penalized her for having "family illness issues which affected attendance." (*Id.* 1::248:15–250:13; Pl.'s Ex. 2). Also like Plaintiff, Ms. Cortese testified that she worked a full shift at Southern Oaks on November 30th without any notice of being terminated. (Unoff. Tr. 1::254:8–17). Ms. Cortese recounted that she went to work on December 1st (the day Terrace took over Southern Oaks) and clocked in as she normally did, but that a Terrace supervisor immediately told her to go home and to call the next day because there had been a problem with her application. (*Id.* 1::254:13–255:25). When Ms. Cortese called on December 2nd, an unidentified Terrace employee informed her that she was no longer needed because she "wasn't the type of nurse that the Terrace of St. Cloud wanted to have on their staff." (*Id.* 1::256:1–13). When Ms. Cortese asked why, the employee only re-iterated that she was not the type of nurse

Terrace wanted and hung up. (*Id.* 1::256:14–23). Again like Plaintiff, Ms. Cortese attempted several times to reach a supervisor for an explanation, but was ignored. (*Id.* 1::256:24–257:3). Ms. Bourland eventually responded to Ms. Cortese via text message that she could not discuss the matter. (*Id.* 1::257:3–11). Ms. Cortese testified that she believes she was let go due to the medical leave she took. (*Id.* 1::257:12–258:2).

Based on the above-cited evidence and testimony, a reasonable jury could conclude that Terrace acted with malice or reckless indifference when it denied employment to Plaintiff due to a perceived need to afford her a reasonable accommodation. Plaintiff's testimony provides direct evidence of Terrace's intent to discriminate, as a Terrace employee informed Plaintiff that her excessive medical leave was Terrace's reason for not retaining her. The temporal proximity of Plaintiff's departure from her last period of medical leave—approximately four weeks—supports this notion. Moreover, Ms. Cortese's testimony corroborates Plaintiff's account by showing that Terrace not only viewed employees who took medical leave in a negative light, but also overtly threatened those who it perceived as taking too much time off. Ms. Cortese's testimony also supplies evidence of a pattern of discrimination, as Ms. Cortese was separated from employment in the same way and under the same circumstances as Plaintiff. Additionally, Southern Oaks' official termination of Plaintiff on November 30th without Plaintiff's knowledge, coupled with Terrace's decision not to hire Plaintiff the very next day, permits the reasonable inference that Terrace used the transition from Southern Oaks as a ruse to rid itself of certain employees under the guise of declining to offer employment. Lastly, Ms. Bourland's testimony and answers to interrogatories clearly contradict Terrace's allegedly legitimate, non-discriminatory reason for not extending

employment to Plaintiff. Despite Terrace's position that it denied employment to Plaintiff for her failure to complete its application process, Ms. Bourland testified that she had no idea whether Plaintiff completed Terrace's application process and that Terrace actually declined to employ Plaintiff due to her poor attitude and work performance. A reasonable jury could therefore conclude that Terrace's proffered reason for not hiring Plaintiff was false and merely a pretext to engage in discrimination.

From this evidence, and based on the Court's review of the entire trial record, substantial evidence exists to support the jury's award of punitive damages against Terrace. A reasonable jury could conclude that Terrace engaged in a pattern of discrimination, acted malevolently toward Plaintiff's civil rights, or blatantly disregarded its civil obligations. Accordingly, Terrace's renewed motion for judgment as a matter of law will be denied.

### B. Alternative Motion for New Trial

Terrace alternatively moves for a new trial. (Doc. 130, pp. 16–19). A district court may grant a new trial for a variety of reasons, including when the verdict is against the great weight of the evidence, the damages awarded by the jury are excessive, the court erred in admitting or excluding evidence or in instructing the jury on the law, or other circumstances resulted in a patently unfair trial. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Whatever its reason, "a district court may, in its discretion, grant a new trial 'if in [the court's] opinion, the verdict . . . will result in a miscarriage of justice, even though there may be substantial evidence'" which would preclude the entry of judgment as a matter of law. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, No. 14-13404, 2016 WL 1105394, at *8 (11th Cir. Mar. 22, 2016) (quoting *Hewitt v. B.F. Goodrich*

*Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).  Unlike a motion for judgment as a matter of law made pursuant to Rule 50, the court "is free to weigh the evidence" in assessing whether to grant a new trial.  *Id.* (quoting *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)).

Terrace asserts that a number of errors resulted in a trial that was patently unfair.  First, Terrace states that it was unfair to allow Plaintiff to try its case under the theory that Terrace could be held liable for the conduct of Southern Oaks.  (Doc. 130, p. 17).  Terrace claims that Plaintiff never alleged this theory in either her Charge of Discrimination submitted to the Equal Employment Opportunity Commission or her Amended Complaint and that Terrace was never notified of Plaintiff's theory of liability until trial.  Terrace's argument is unfounded, however, as Plaintiff's Amended Complaint clearly premised liability against Terrace as Southern Oaks' successor-in-interest, (Doc. 25, ¶¶ 39, 65–71), Terrace recognized Plaintiff's theory of liability when it asserted the affirmative defense that it was not Southern Oaks' successor-in-interest, (Doc. 27, ¶ 10), and the parties' eventually stipulated for purposes of trial that Terrace was Southern Oaks' successor-in-interest under the ADA, (Doc. 67, ¶ 9(r)).

Next, despite complaining that it was not aware of Plaintiff's theory of liability until trial, Terrace nevertheless insists that it did not mean to stipulate to the fact that it was Southern Oaks' successor-in-interest and that, as a result, the jury should not have been permitted to consider the stipulation.  (Doc. 130, p. 17).  However, as explained previously, the parties are bound by their pre-trial stipulations.  If Terrace unintentionally agreed to facts which were not true, it is Terrace's mistake to bear.  In a similar vein, Terrace contends that a new trial is necessary because the jury was never instructed on

the law of successor liability. (*Id.*). Again, however, there was never a need for the jury to receive such instruction, as Terrace agreed at all times during trial that it was Southern Oaks' successor-in-interest.

Terrace also takes issue with the Court providing the jury with a corrected verdict form during their deliberations to rectify the inadvertent omission of Plaintiff's ADA reasonable accommodation claim—the claim under which Plaintiff ultimately prevailed. (*Id.*). Terrace does not suggest that it was improper for the Court to provide the corrected verdict form; rather, Terrace only argues that the reasonable accommodation claim lacked "any legitimate evidentiary basis" and "should have been disposed of as a matter of law and never should have gone to the jury." (*Id.* at p. 17). The Court therefore reads Terrace's argument as asserting that the jury's verdict on Plaintiff's reasonable accommodation claim is contrary to the great weight of the evidence.

However, a jury's verdict is not contrary to the great weight of the evidence simply because the party moving for a new trial believes that his evidence is more persuasive than his opponent's. *See Redd v. City of Phenix City*, 934 F.2d 1211, 1215 (11th Cir. 1991). Rather, a new trial should only be granted on evidentiary grounds where the moving party points to an error in admitting or excluding evidence that was so harmful as to sway the jury in its consideration of the matter. *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). A jury's verdict may also be contrary to the great weight of the evidence where the verdict "is precipitated by jury misconduct or other prejudicial trial events that 'contaminate' the jury's deliberative process." *Hardin v. Hayes*, 52 F.3d 934, 938 n.6 (11th Cir. 1995) (per curiam).

Although Terrace concludes that the jury's verdict in this case must have been the result of "unlawful [j]ury [c]ompromise," Terrace does not point to any fact or event which would support such an inference. (Doc. 130, p. 18). Terrace likewise cites no evidence which it believes was wrongly admitted or excluded. Indeed, upon review of the trial record as a whole, the Court finds no just reason to disturb the jury's verdict in this case. Terrace's alternative motion for new trial is therefore denied as well.

### III.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial (Doc. 130) is **DENIED**.

2. Plaintiff has **ten (10) days** from the date of this Order to renew her motion for attorney's fees and costs.

**DONE AND ORDERED** in Orlando, Florida on April 5, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record